1
2
3
4

# UNITED STATES DISTRICT COURT

5

### EASTERN DISTRICT OF CALIFORNIA

6

7   ERIC JOSEPH BUDD,

8                           Plaintiff,

9           v.

10   FLEMMING, *et al.*,

11                           Defendants.

12
13
14
15

Case No.  1:23-cv-00748-BAM (PC)

ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION

FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE

(ECF No. 9)

**FOURTEEN (14) DAY DEADLINE**

16   I.      **Background**

17          Plaintiff Eric Joseph Budd ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma*

18   *pauperis* in this civil rights action under 42 U.S.C. § 1983.

19          On September 12, 2023, the Court issued a screening order granting Plaintiff leave to file

20   a first amended complaint or a notice of voluntary dismissal within thirty (30) days.  (ECF No. 9.)

21   The Court expressly warned Plaintiff that the failure to comply with the Court's order would

22   result in a recommendation for dismissal of this action, with prejudice.  (*Id.* at 16.)  The deadline

23   has expired, and Plaintiff has failed to file an amended complaint or otherwise communicate with

24   the Court.

25   II.     **Failure to State a Claim**

26          A.      **Screening Requirement**

27          The Court is required to screen complaints brought by prisoners seeking relief against a

28   governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

1

§ 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**B.     Plaintiff's Allegations**

Plaintiff is currently housed at Valley State Prison in Chowchilla, California.  The events in the complaint are alleged to have occurred while Plaintiff was a pretrial detainee in several San Diego, California facilities, as well as while Plaintiff was a state prisoner housed at Avenal State Prison in Avenal, California.  Plaintiff names the following defendants:  (1) Micheal Flemming, Public Defender, Vista Court; (2) Daniel Gochnour, DA, Vista Court; (3) Martian Gamboa, Warden, Avenal State Prison; and (4) Unnamed Arresting Officer DC69/CN394983, 1/15/2019, Del Mar PD.

Plaintiff alleges as follows:

Claim One

While a pretrial detainee at San Diego County jails (George Baily DF and VCDF), Plaintiff requested access to the law library and was forcibly denied.  Deputy John Doe told

2

1   Plaintiff on several occasions that there was no law library.  When Plaintiff requested transfer to a
2   facility with a law library, the transfer was denied.  When Plaintiff filed a 602 to fight the denial,
3   Plaintiff was denied and transferred and his legal work and court papers were destroyed.  Plaintiff
4   was told he needed the judge to submit.

5       Plaintiff alleges he was injured because the actions by Deputy John Doe and his superior
6   officer prevented Plaintiff from having the legal perspective, tools, and safe haven to prepare his
7   defense and practice administration.

8       Claim Two

9       At Avenal State Prison, Plaintiff was put to work despite requests for legal support and the
10  fact that he is actually innocent for the crimes for which he has been convicted.  In the process of
11  alerting nearly every officer of his innocence, Plaintiff was finally supported and accepted in a
12  law library but was too late for the Appellate Court.  When Deputy John Doe heard Plaintiff was
13  blaming prison procedures for his tardiness, Deputy John Doe came in a random search and threw
14  out all of Plaintiff's appeal documents and legal research.  Deputy John Doe 2 refused to process
15  Plaintiff's legal mail through the legal mail circuit and made Plaintiff send via regular mail.  The
16  counselor moved papers around to alter Plaintiff's good time to be an extra year of imprisonment,
17  despite fitting all the criteria for having a year reduced.

18      Plaintiff alleges he was injured because his appeal was derailed.

19      Claim Three

20      Plaintiff alleges violations of the Sixth and Eighth Amendments.  No testimony in either
21  case was truthfully or willfully testified that the defendant entered the house or houses to fulfill
22  writ included in the definition of burglary.

23      The officer punched and kicked Plaintiff in the face, and falsely incited resisting arrest.
24  This caused the loss of Plaintiff's car, business, and house, so the officer could get his jollies off
25  on a mentally disabled person.

26      Plaintiff alleges he was injured because he was disfigured and lost everything, including a
27  future the courts cannot imagine.  Plaintiff further states that he did not submit a request for
28  administrative relief related to this claim because he is wrongly imprisoned.

1    Request for Relief

2    Plaintiff seeks relief of 1 million dollars for each year he was wrongly incarcerated.

3    **C.      Discussion**

4    Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18, and 20

5    and fails to state a cognizable claim for relief.  In addition, it appears that the majority of

6    Plaintiff's claims may be *Heck*-barred.

7                    **1.      Exhibits**

8    Plaintiff attached approximately 25 pages of exhibits to the complaint.  None of the

9    exhibits are incorporated by reference or otherwise explained.  Accordingly, the Court has not

10   reviewed the exhibits.

11   While exhibits are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are

12   not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In addition, while

13   "much liberality is allowed in construing pro se complaints, a pro se litigant cannot simply dump

14   a stack of exhibits on the court and expect the court to sift through them to determine if some

15   nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a

16   cognizable claim."  *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Tex. 2017).  "The

17   Court will not comb through attached exhibits seeking to determine whether a claim possibly

18   could have been stated where the pleading itself does not state a claim. In short, [Plaintiff] must

19   state a claim, not merely attach exhibits."  *Stewart v. Nevada*, No. 2:09-CV-01063-PMP-GWF,

20   2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011).

21                   **2.      Linkage and Federal Rule of Civil Procedure 10**

22   The Civil Rights Act under which this action was filed provides:

23   Every person who, under color of [state law] . . . subjects, or causes to be
     subjected, any citizen of the United States . . . to the deprivation of any rights,
24   privileges, or immunities secured by the Constitution . . . shall be liable to the
     party injured in an action at law, suit in equity, or other proper proceeding for
25   redress.

26   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

27   the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See*

28   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976).  The

4

Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff fails to adequately link any named defendants to his claims. Plaintiff's allegations reference various John Doe officers and individuals who are not named in the caption as defendants, and none of the named defendants are included in Plaintiff's allegations, in violation of Rule 10(a). *See* Fed. R. Civ. P. 10(a) (Rule 10(a) requires that plaintiffs include the names of all parties in the caption of the complaint). The Court cannot have the complaint served on any of the parties discussed only in the body of the Complaint. *See Soto v. Bd. of Prison Term*, No. CIV S-06-2502 RRB DAD P, 2007 WL 2947573, at *2 (E.D. Cal. Oct. 9, 2007) (The Court cannot order service of the Complaint without the names of the parties included in the caption of the Complaint). Rule 10 of the Federal Rules of Civil Procedure requires, among other things, that a complaint (a) state the names of "all the parties" in the caption; and (b) state a party's claims in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10. Plaintiff's complaint is subject to dismissal on this basis alone. *See Martinez v. Davey*, No. 16-cv-1658-AWI-MJS (PC), 2018 WL 898153, at *5 (E.D. Cal. Feb. 15, 2018) (dismissing, among other reasons, because "Plaintiff makes allegations against numerous non-party individuals not named in the caption of the complaint" in violation of Rule 10(a)).

### 3.     Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also*

1    *Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

2        Here, Plaintiff's complaint is short, but it is not a plain statement of his claims showing

3 that he is entitled to relief. Many of Plaintiff's allegations are conclusory and Plaintiff does not

4 identify when the incidents occurred or who was involved.

5             **4.**       **Federal Rules of Civil Procedure 18 and 20**

6        Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed.

7 R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*,

8 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so

9 long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and

10 occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2);

11 *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement

12 refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are

13 properly joined under Rule 20(a) will the Court review the other claims to determine if they may

14 be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

15        Plaintiff may not raise different claims against different defendants in a single action. For

16 instance, Plaintiff may not, in a single case, assert a claim related to accessing the law library at

17 one institution against one set of defendants while simultaneously asserting a claim related to

18 destruction of his legal property against a different set of defendants at a different institution.

19 Unrelated claims involving multiple defendants belong in different suits.

20        In addition, it appears that some of Plaintiff's claims arise out of events that occurred in

21 San Diego County. The federal venue statute requires that a civil action, other than one based on

22 diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all

23 defendants are residents of the State in which the district is located, (2) a judicial district in which

24 a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

25 of the property that is the subject of the action is situated, or (3) if there is no district in which an

26 action may otherwise be brought as provided in this section, any judicial district in which any

27 defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C.

28 § 1391(b). Any events that occurred in San Diego County should have been brought in the

1   United States District Court for the Southern District of California.

2   **5.      Supervisory Liability**

3   Insofar as Plaintiff is attempting to sue the Warden of Avenal State Prison, or any

4   defendant, liable based solely upon their supervisory role, he may not do so.  Liability may not be

5   imposed on supervisory personnel for the actions or omissions of their subordinates under the

6   theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609

7   F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir.

8   2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

9   Supervisors may be held liable only if they "participated in or directed the violations, or

10   knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045

11   (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v.*

12   *Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  "The requisite causal connection may be established

13   when an official sets in motion a 'series of acts by others which the actor knows or reasonably

14   should know would cause others to inflict' constitutional harms."  *Corales v. Bennett*, 567 F.3d at

15   570.  Supervisory liability may also exist without any personal participation if the official

16   implemented "a policy so deficient that the policy itself is a repudiation of the constitutional

17   rights and is the moving force of the constitutional violation."  *Redman v. Cty. of San Diego*, 942

18   F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other

19   grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).  When a defendant holds a supervisory

20   position, the causal link between such defendant and the claimed constitutional violation must be

21   specifically alleged.  *See Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,

22   589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement

23   of supervisory personnel in civil rights violations are not sufficient.  *See Ivey v. Board of Regents*,

24   673 F.2d 266, 268 (9th Cir. 1982).

25   **6.      Prosecutorial Immunity**

26   Plaintiff has named DA Daniel Gochnour as a defendant in this action.  However,

27   prosecutors acting in their official capacities are immune from liability under section 1983.  *See*

28   *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) ("Absolute immunity is

7

generally accorded to judges and prosecutors functioning in their official capacities"); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (holding that judges and prosecutors are immune from liability for damages under section 1983. State prosecutors are absolutely immune when performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "[I]n initiating a prosecution and in presenting the State's case, [a] prosecutor is immune from a civil suit for damages under § 1983." *Id.*

Although Plaintiff has not alleged any specific actions or inactions by DA Daniel Gochnour that violated Plaintiff's rights, based on Plaintiff's statements regarding his wrongful incarceration, it appears that Plaintiff's claims may be related to Defendant Gochnour's official capacity and are barred by prosecutorial immunity.

### 7. Public Defenders

Insofar as Plaintiff is attempting to bring a claim under Section 1983 against Michael Flemming, who appears to be the public defender assigned to represent Plaintiff in an underlying criminal action, he may not do so. To state a claim under Section 1983, Plaintiff must allege a deprivation of a right secured by the Constitution and laws of the United States "by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Attorneys do not act under color of state law when they perform "a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Szijarto v. Legeman*, 466 F.2d 864 (9th Cir. 1972) (Attorney, whether retained or appointed, does not act "under color of state law" pursuant to § 1983). Accordingly, Plaintiff cannot state a cognizable Section 1983 claim against Defendant Flemming.

### 8. *Heck v. Humphrey*

The crux of Plaintiff's complaint appears to be that he was wrongfully convicted, and thereafter thwarted in his attempts to submit an appeal regarding his conviction.

"Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for writ of habeas corpus, 28 U.S.C. § 2254, and a complaint under . . . 42 U.S.C.

§ 1983." *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." *Id.* (internal citation omitted). It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the Heck bar, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81; *Heck v. Humphrey*, 512 U.S. 477, 482, 486–87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 644 (1997).

In *Heck,* the Supreme Court held that in order to recover damages for alleged "unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81–82.

Plaintiff may not proceed in a civil rights action to challenge the validity of his sentence, or to any matters that, if successful, would necessarily demonstrate the invalidity of his confinement or its duration. Thus, to proceed with a cognizable claim, Plaintiff would have to either plead and demonstrate that his conviction had been overturned or demonstrate that the *Heck* bar does not apply here. *See, e.g.*, *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (en banc) (finding that a prisoner's claim that, even if successful, would not necessarily lead to

1   immediate or speedier release fell outside the "core of habeas corpus" and section 1983 was the

2   proper vehicle).

3        As currently pled, it appears that the majority of Plaintiff's claims may be *Heck*-barred.

4              **9.     First Amendment**

5                   a.     <u>Access to Courts</u>

6        Prisoners (including pretrial detainees) have a constitutional right of access to the courts

7   under the First Amendment.  *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (limiting this claim to

8   direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions

9   of confinement); *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To establish a claim for any

10  violation of the right of access to the courts, the prisoner must prove that there was an inadequacy

11  in the prison or jail's legal access program that caused him an actual injury.  *See Lewis*, 518 U.S.

12  at 350-55.  To prove an actual injury, the prisoner must show that the inadequacy in the prison or

13  jail's program hindered his efforts to pursue a non-frivolous claim concerning a conviction or

14  conditions of confinement.  *See id*. at 354-55.  The right of access to the courts, however, is

15  limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 civil

16  rights actions. *Lewis v. Casey*, 518 U.S. and 354–55. Impairment of any other litigating capacity

17  is simply one of the incidental (and perfectly constitutional) consequences of conviction and

18  incarceration.  A claim "is frivolous where it lacks an arguable basis either in law or in fact."

19  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

20       In order to frame a claim of a denial of the right to access the courts, a prisoner must

21  allege facts showing that he has suffered "actual injury," a jurisdictional requirement derived

22  from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with

23  respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

24  present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations omitted); see also

25  *Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (finding that district properly granted

26  summary judgment because prisoner had no "allege[d] injury, such as inability to file a complaint

27  or defend against a charge" resulting from deficiencies in access to legal materials) (quoting

28  *Lewis*, 518 U.S. at 353 & 353 n. 4).

1    Claims for denial of access to the courts may arise from the frustration or hindrance of "a

2    litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a

3    meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536

4    U.S. 403, 412–415 (2002). The plaintiff must show: 1) the loss of a 'nonfrivolous' or 'arguable'

5    underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be

6    awarded as recompense but that is not otherwise available in a future suit.  *Id*. at 413–14.

7    To the extent Plaintiff contends he was denied access to the courts while he was a pretrial

8    detainee, it appears these events occurred while Plaintiff was detained in San Diego County, and

9    those claims should have been brought in the Southern District of California.  Plaintiff may not

10   raise claims before this court that occurred in San Diego County.

11   To the extent Plaintiff contends he was denied access to the courts while he was housed at

12   Avenal State Prison, Plaintiff has failed to link any named defendants to these claims.

13                        b.    Retaliation

14   Allegations of retaliation against a prisoner's First Amendment rights to speech or to

15   petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532

16   (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v.

17   Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

18   Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

19   adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

20   such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

21   not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567–

22   68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658

23   at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

24   Adverse action taken against a prisoner "need not be an independent constitutional

25   violation.  The mere threat of harm can be an adverse action."  *Watison*, 668 F.3d at 1114

26   (internal citations omitted).  A causal connection between the adverse action and the protected

27   conduct can be alleged by an allegation of a chronology of events from which retaliation can be

28   inferred.  *Id.*  The filing of grievances and the pursuit of civil rights litigation against prison

1   officials are both protected activities.  *Rhodes*, 408 F.3d at 567–68.  The plaintiff must allege

2   either a chilling effect on future First Amendment activities, or that he suffered some other harm

3   that is "more than minimal."  *Watison*, 668 F.3d at 1114.  A plaintiff successfully pleads that the

4   action did not reasonably advance a legitimate correctional goal by alleging, in addition to a

5   retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were

6   "unnecessary to the maintenance of order in the institution."  *Id.*

7       Plaintiff may be attempting to raise a claim for retaliation related to the actions of

8   Deputies John Doe and John Doe 2 after Plaintiff blamed prison procedures for missing his

9   deadlines with the Appellate Court.  However, these deputies are not named as defendants.  In

10  addition, it is not clear whether Plaintiff's verbal complaint regarding prison policies rises to the

11  level of protected conduct under the First Amendment.

12              c.      Legal Mail

13      "[P]risoners have a protected First Amendment interest in having properly marked legal

14  mail opened only in their presence."  *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir.

15  2017) (concluding the protected First Amendment interest extends to civil legal mail).  Consistent

16  with the First Amendment, prison officials may (1) require that mail from attorneys be identified

17  as such and (2) open such correspondence in the presence of the prisoner for visual inspection.

18  *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974).

19      Plaintiff fails to state a claim regarding Deputy John Doe 2 refusing to process Plaintiff's

20  outgoing legal mail through the legal mail circuit and requiring Plaintiff to send his legal mail via

21  regular mail.  There is no allegation that Plaintiff's legal mail was opened outside of his presence,

22  and the Court is aware of no right to have outgoing legal mail sent separately from regular mail.

23          **10.     Fourth Amendment – Excessive Force During Arrest**

24      Although not entirely clear, it appears that Plaintiff is complaining of the use of excessive

25  force during his arrest.  Excessive force claims which arise in the context of an arrest or

26  investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness

27  standard.  *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  To determine whether a use of

28  force was objectively reasonable, courts balance "the nature and quality of the intrusion on the

                                        12

1   individual's Fourth Amendment interests" against the "countervailing government interests at

2   stake." *Id.* at 396.  This "requires careful attention to the facts and circumstances of each

3   particular case, including the severity of the crime at issue, whether the suspect poses an

4   immediate threat to the safety of the officers or others, and whether [the suspect] is actively

5   resisting arrest or attempting to evade arrest by flight." *Id.*

6       Plaintiff's complaint does not adequately allege a claim for excessive force during his

7   arrest.  Plaintiff does not allege where it occurred, when it occurred, or the name of the officer

8   involved.

9                   **11.    Fourteenth Amendment – Deprivation of Property**

10      Insofar as Plaintiff also alleges that Deputy John Doe conducted a random search and

11  threw out all of Plaintiff's appeal documents and legal research, these allegations also are not

12  sufficient to support a cognizable claim.  Prisoners have a protected interest in their personal

13  property.  *Hansen v. May,* 502 F.2d 728, 730 (9th Cir. 1974).  An authorized, intentional

14  deprivation of property is actionable under the Due Process Clause.  *See Hudson v. Palmer*, 468

15  U.S. 517, 532 n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982));

16  *Quick v. Jones,* 754 F.2d 1521, 1524 (9th Cir. 1985).  However, "an unauthorized intentional

17  deprivation of property by a state employee does not constitute a violation of the procedural

18  requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post

19  deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

20      As Plaintiff appears to contend that his property was wrongfully destroyed, due process is

21  satisfied if there is a meaningful post-deprivation remedy available to Plaintiff.  *Id.* Plaintiff has

22  an adequate post-deprivation remedy available under California law.  *Barnett v. Centoni,* 31 F.3d

23  813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95).  Therefore, Plaintiff fails to

24  allege a cognizable due process claim for the alleged deprivation of his property.

25                      **12.    Exhaustion of Administrative Remedies**

26      Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that

27  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

28  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

1   such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Prisoners are

2   required to exhaust the available administrative remedies prior to filing suit.  *Jones v. Bock*, 549

3   U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

4   Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief

5   offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion

6   requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532

7   (2002).

8         Here, Plaintiff's complaint does not adequately allege that he exhausted his administrative

9   remedies for all of the claims alleged.  Plaintiff alleges that he did not submit a request for relief

10   for some of his claims because he is wrongly imprisoned.  This does not excuse Plaintiff from the

11   exhaustion requirement.

12               **13.**     **Doe Defendants**

13         Plaintiff names several John Doe deputies (although they are not named as defendants).

14   "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v.*

15   *Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff is advised that John Doe or Jane Doe

16   defendants (i.e., unknown defendants) cannot be served by the United States Marshal until

17   Plaintiff has identified them as actual individuals and amended his complaint to substitute names

18   for John Doe or Jane Doe.

19   **III.**    **Failure to Prosecute and Failure to Obey a Court Order**

20        **A.**     **Legal Standard**

21         Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with

22   any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

23   within the inherent power of the Court."  District courts have the inherent power to control their

24   dockets and "[i]n the exercise of that power they may impose sanctions including, where

25   appropriate, . . . dismissal."  *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A

26   court may dismiss an action, with prejudice, based on a party's failure to prosecute an action,

27   failure to obey a court order, or failure to comply with local rules.  *See, e.g.*, *Ghazali v. Moran*, 46

28   F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*,

963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B.     Discussion**

Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's order.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against dismissal because public policy favors disposition on the merits.  *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here.  *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement.  *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424.  The Court's July 20, 2023 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice.  (ECF No. 9, p. 16.)  Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further

1   unnecessary expenditure of its scarce resources.  As Plaintiff is proceeding *in forma pauperis* in

2   this action, it appears that monetary sanctions will be of little use and the preclusion of evidence

3   or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

4   **IV.    Conclusion and Recommendation**

5           Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a

6   district judge to this action.

7           Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY

8   RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim

9   pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to

10  prosecute this action.

11          These Findings and Recommendation will be submitted to the United States District Judge

12  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen**

13  **(14) days** after being served with these Findings and Recommendation, Plaintiff may file written

14  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

15  Findings and Recommendation."  Plaintiff is advised that failure to file objections within the

16  specified time may result in the waiver of the "right to challenge the magistrate's factual

17  findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

18  *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19

20  IT IS SO ORDERED.

21      Dated:   __**October 30, 2023**__          ___/s/ Barbara A. McAuliffe___

22                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28